1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CHRISTOPHER KELLY WELLS,                    No.  2:16-cv-2807 WBS AC P

12                  Petitioner,

13           v.                                  FINDINGS AND RECOMMENDATIONS

14   JOE A. LIZARRAGA,

15                  Respondent.

16

17          Petitioner is a California state prisoner proceeding pro se with an application for a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  The action proceeds on a petition which challenges

19   petitioner's 2014 conviction for robbery in the first and second degree and assault with a firearm.

20   ECF No. 1.  Respondent has answered, ECF No. 13, and petitioner has filed a traverse, ECF No.

21   29.

22                                        BACKGROUND

23   I.      Proceedings in the Trial Court

24           A.  Preliminary Proceedings

25          Petitioner and his co-defendant Elisha Simpson were charged in Sacramento County

26   Superior Court with robbery in the first and second degree and assault with a firearm, and

27   petitioner was alleged to have personally used a firearm in relation to the first-degree robbery and

28   ////

                                                    1

1    assault charges.  1 CT 245-48 (Amended Consolidated Information).[1]  It was further alleged that

2    petitioner had two previous convictions for serious and violent felonies—a 1994 conviction for

3    Assault By Means of Force Likely to Cause Great Bodily Injury (Cal. Penal Code § 245(a)(1))

4    and a 2009 conviction for First Degree Burglary (Cal. Penal Code § 459)—making him eligible

5    for a three-strikes life sentence within the meaning of Penal Code §§ 667(e)(2)(C) and

6    1170.12(c)(2)(C).  1 CT 247.  The prior conviction allegations were bifurcated and petitioner

7    waived his right to a jury trial on them.  1 RT 86-87 (bifurcation); 3 RT 845-50 (jury waiver).[2]

8         B.  The Evidence Presented at Trial

9              1.  Prosecution Case

10   The jury heard evidence of the following facts.[3]

11   May 2013 Robbery of James Allenbaugh (Count One)

12        In 1988, James Allenbaugh suffered a serious back injury for which he was prescribed

13   various pain medications, including Vicodin, Oxycontin, and Fentanyl.  He continued taking the

14   pain medications and eventually became addicted to them.

15        In May 2013, Allenbaugh lived alone in an apartment in Sacramento.  He owned

16   approximately fifteen guns, most of which he kept in a gun cabinet.  Simpson, who Allenbaugh

17   met three months prior, stopped by the apartment a couple of times a week.  On occasion, they

18   would use marijuana or methamphetamine together.  Simpson introduced Allenbaugh to Wells,

19   also known as "Roach."  The three hung out at Allenbaugh's apartment approximately four or

20   five times prior to May 20, 2013.

21        At approximately 2:00 a.m. on May 20, 2013, Simpson and Wells stopped by

22   Allenbaugh's apartment for a visit.  Allenbaugh was suffering from a migraine headache and back

23   pain and was out of his pain medication.  Wells and Simpson suggested that heroin might help

24   ease his pain.  Wells loaded three syringes with heroin, putting the same amount in two of the

25   [1]  "CT" refers to the Clerk's Transcript on Appeal, Volumes 1 and 2 (Lodged Docs. 1 & 2).

26   [2]  "RT" refers to the Reporter's Transcript on Appeal, Volumes 1 through 3 (Lodged Docs. 3-5).
     [3]  The following summary is adapted from the opinion of the California Court of Appeal, Exhibit

27   A (ECF No. 13 at 11-22); 2015 WL 7292174; 2015 Cal. App. Unpub. LEXIS 8400.  The
     undersigned has independently reviewed the trial transcripts (Lodged Docs. 3-5) and finds this

28   summary to be accurate.

syringes and double the amount in the third syringe.  Wells injected Allenbaugh with the fuller syringe, and Wells and Simpson injected themselves with the other two syringes.  Allenbaugh was slightly uncomfortable using more than defendants, but agreed nonetheless because he was a little bit intimidated by Wells's size and believed Wells might harm him.  He also believed the heroin might give him some relief from his migraine.  Allenbaugh was immediately affected by the heroin and nodded off several times while sitting in his wheelchair.

A few hours later, defendants asked Allenbaugh if he wanted to go get coffee. Allenbaugh agreed and used his cane to walk to Simpson's car.  Simpson drove in circles for 15 or 20 minutes, driving past two coffee shops several times.  Simpson eventually stopped the car at an apartment complex about a block or two from Allenbaugh's apartment.  Wells got out, said he "had some business to take care of," and walked away.  Frustrated with driving around in circles, Allenbaugh got out of the car and said he was going to walk home, but had to stop twice and lay his head down because of his headache and his back.  Simpson told him to get back in the car so she could give him a ride back to his apartment.  When Allenbaugh got back in the car, Simpson went to get coffee at a coffee shop much farther from Allenbaugh's apartment than other coffee shops.

Simpson drove Allenbaugh back to his apartment.  Allenbaugh walked to the door and Simpson followed behind him and opened the gate for him.  Allenbaugh opened the door to find the apartment "pitch black," which he found odd because he had left the lights and television on. Suddenly, Wells turned the lights on, put one of Allenbaugh's guns to Allenbaugh's head, and told him to get down.  Allenbaugh thought Wells was kidding at first, but then realized he was "dead serious" and complied by lying down on the ground on his stomach.  Wells told Simpson, who by then was also inside the apartment, to duct tape Allenbaugh's hands.  She retrieved the tape from Allenbaugh's workbench and taped his hands behind his back.  Wells instructed Simpson to "do what she needed to do."  Allenbaugh could hear Simpson breaking the handle on the locked gun cabinet, and then ransacking his bedroom.  When Simpson said she was done, Wells went into the bedroom and went through Allenbaugh's drawers.  Suddenly, the apartment ////

3

1   "got quiet" and Allenbaugh realized defendants had gone, leaving through the bedroom window.

2   He used a knife to free himself from the duct tape.

3         On May 22, 2013, Sacramento County Sheriff's Deputy Brian Painter was dispatched to

4   Allenbaugh's apartment after receiving a report of a home invasion robbery.  Allenbaugh, who

5   was accompanied by his sister, stated the crime occurred on May 20, 2013, but he did not

6   immediately report it because he was afraid of defendants and feared retaliation.  He described

7   the firearms that were taken by defendants and Deputy Painter collected the duct tape Simpson

8   used to bind his wrists together.

9         June 2013 Robbery of Walmart (Count Two)

10        On June 1, 2013, Brian Jenkins worked as a plain-clothed asset protection associate at

11  Walmart.  At approximately 7:00 p.m., Jenkins noticed Simpson in the sporting goods area

12  rearranging and shifting the items around in the cart.  Jenkins watched Simpson for a while, and

13  then lost sight of her for a "minute or so" until he saw her leaving the store through the exit in the

14  garden center.  Believing Simpson had not paid for the merchandise, Jenkins hurried after her in

15  an effort to apprehend her.  In the meantime, Wells was interacting with the door greeter who was

16  positioned at the entrance to the garden center.  Jenkins later told law enforcement that, as

17  Simpson exited the store, it appeared Wells was attempting to distract the greeter.  The store's

18  video surveillance recorded Simpson leaving the store through the garden center exit with a cart

19  containing various items.  The video also recorded Wells walking through the store with

20  Simpson.

21        Jenkins followed Simpson into the parking lot after confirming with the greeter that

22  Simpson had not shown her receipt for the merchandise.  Unbeknownst to Jenkins, Wells

23  followed behind him.  When Jenkins caught up with Simpson, he identified himself as a member

24  of Walmart's asset protection and instructed her to accompany him back into the store.  However,

25  Wells inserted himself between Jenkins and Simpson and, reaching for his waistband "like he was

26  reaching for a weapon," told Jenkins in a threatening manner to "turn around and walk away."

27  Jenkins backed away as Wells continued to walk toward him in a threatening manner and

28  repeatedly told him to leave.  When Jenkins turned to get the license plate information, Wells

4

1    again walked toward him in a threatening manner.  Simpson, Wells, and another woman quickly

2    loaded the merchandise into the car and then drove quickly out of the parking lot.

3              June 2013 Assault with Deadly Weapon on Woodvine (Count Three)

4          On June 2, 2013, Richard Woodvine and his wife lived in a home in Antelope.  His

5    stepdaughter, Nicole Turknett, lived with them.  Simpson and Wells were acquaintances of

6    Turknett.  They visited the home regularly, slept over on occasion, and kept some of their

7    clothing there.  Woodvine drove a truck and was generally only home on weekends.  He was not

8    comfortable with defendants being in the house because he believed defendants were responsible

9    for personal items such as tools and a cell phone going missing from his home.

10         On June 2, 2013,[4] defendants showed up together at the house.  Woodvine told defendants

11   he did not want them at the house and they needed to leave.  When Wells said he needed to "get

12   his stuff," Woodvine told him "his stuff wasn't there."  Wells tried to get in, but Woodvine stood

13   in his way.  Wells became angry.  He told Woodvine, "I'm packing" and threatened to shoot him,

14   then pulled a gun out of his waistband and stuck it in Woodvine's stomach.  Woodvine said, "[I]f

15   you're going [to] shoot me, shoot me, because if you don't, I'm going to take it away from you

16   and I'm going to shoot you."  When Woodvine's wife yelled at Turknett to call the police, Wells

17   and Simpson walked away.  Police arrived the following day and took a report of the incident

18   from Woodvine.

19             2.  Defense Case

20         Deputy Ryan Smith, from the Sacramento Sheriff's Department, testified that on the

21   evening of June 3, 2013, he arrived at Woodvine's house with approximately six to eight other

22   officers for the purpose of arresting petitioner.  He questioned Woodvine about whether he had

23   seen petitioner, at which time Woodvine reported that petitioner had assaulted him the day before.

24   Deputy Smith did not recall Woodvine providing an explanation as to why he did not report the

25   incident sooner, but did recall Woodvine saying that he had told someone to call the police, at

26

27   [4]  The opinion of the California Court of Appeal stated that the encounter occurred on June 1,
     2013.  ECF No. 13 at 13.  However, the record reflects that Wells and Simpson went to Mr.
28   Woodvine's residence on June 2, 2013.  1 RT 199; 2 RT 617-18.

                                                    5

1  which point petitioner and Simpson left.  Woodvine also told Deputy Smith that after petitioner

2  and Simpson left, he put his .22 rifle by the door in case petitioner came back to the house.  2 RT

3  617-22.

4       C.  Outcome

5       The jury found petitioner guilty of first-degree robbery (Cal. Penal Code § 211), second-

6  degree robbery (Cal. Penal Code § 211), and assault with a firearm (Cal. Penal Code § 245(a)(2)).

7  The jury found true the allegation that petitioner personally used a firearm with respect to the

8  first-degree robbery (Cal. Penal Code, § 12022.53(b)), but found not true the allegation that he

9  personally used a firearm with respect to the charge of assault with a firearm (Cal. Penal Code

10  § 12022.5(a)).  1 CT 56-58.

11       The proceedings on petitioner's prior convictions were bifurcated, and petitioner waived

12  jury trial on the prior convictions.  RT 86-87 (bifurcation); 3 RT 845-50 (jury waiver).  Before the

13  trial on the prior convictions, petitioner unsuccessfully moved to strike the 1994 conviction under

14  People v. Superior Court (Romero), 13 Cal. 4th 497 (1996),[5] and as constitutionally invalid.  1

15  CT 35-44 (motion to strike); 3 RT 1045-46 (motion denied).  At the beginning of the trial on

16  petitioner's priors, the prosecution orally moved to amend the information by interlineation to

17  reflect that petitioner's 1994 prior was for assault with a deadly weapon rather than assault by

18  means of force likely to cause great bodily injury.  3 RT 1047.  The motion was granted over

19  petitioner's objection.  3 RT 1047-48.  The trial court then found true the two prior strike

20  conviction allegations.  3 RT 1051-52.  Petitioner was sentenced to a determinate term of forty

21  years and a consecutive indeterminate term of seventy-six years to life.  3 RT 1056-58.

22       II.  Post-Conviction Proceedings

23       Petitioner timely appealed, and the California Court of Appeal affirmed the judgment of

24  conviction on November 19, 2015.  ECF No. 13 at 11-22.  The California Supreme Court denied

25  review on February 3, 2016.  Lodged Doc. 9.

26

27  [5] The "three-strikes" law mandates enhanced sentences for defendants with qualifying prior
    convictions.  Sentencing courts have limited discretion pursuant to Romero to dismiss priors,
28  thereby avoiding their enhancing effect.

Petitioner filed three petitions for writ of habeas corpus in the Superior Court of Sacramento County while his direct appeal was still pending before the court of appeal.  The first petition was filed on January 1, 2015,[6] and was denied on February 18, 2015, because the claims could have been raised on appeal and petitioner's appeal was still pending.  Lodged Doc. 10.  The second petition was filed on April 10, 2015, and was denied on July 8, 2015, for failing to state a prima facie claim for relief.  Lodged Doc. 11.  On July 10, 2015, petitioner filed a third petition, which was denied as repetitive on August 18, 2015.  Lodged Doc. 12.

On September 14, 2015, petitioner filed a habeas petition in the California Court of Appeal, which was denied without comment or citation on October 2, 2015.  Lodged Doc. 13.

On October 13, 2015, petitioner filed two habeas petitions in the California Supreme Court.  The first challenged the validity of the plea underlying petitioner's prior 1994 conviction, and was denied without comment or citation on January 13, 2016.  Lodged Doc. 14.  The second presented a claim for ineffective assistance of counsel and was denied with citation to In re Clark, 5 Cal. 4th 750, 797-98 (1993), on January 13, 2016.  Lodged Doc. 15.  The instant federal petition was thereafter timely filed.

<u>STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA</u>

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[6] Petitioner is afforded the benefit of the prison mailbox rule during times when he was proceeding pro se.  <u>See</u> <u>Houston v. Lack</u>, 487 U.S. 266, 276 (1988) (establishing rule that a prisoner's court document is deemed filed on the date the prisoner delivered the document to prison officials for mailing).

1    The statute applies whenever the state court has denied a federal claim on its merits,

2    whether or not the state court explained its reasons.  Harrington v. Richter, 562 U.S. 86, 99

3    (2011).  State court rejection of a federal claim will be presumed to have been on the merits

4    absent any indication or state-law procedural principles to the contrary.  Id. (citing Harris v. Reed,

5    489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a

6    decision appearing to rest on federal grounds was decided on another basis)).  "The presumption

7    may be overcome when there is reason to think some other explanation for the state court's

8    decision is more likely."  Id. at 99-100.

9    The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal

10   principle or principles" previously articulated by the Supreme Court.  Lockyer v. Andrade, 538

11   U.S. 63, 71-72 (2003).  Only Supreme Court precedent may constitute "clearly established

12   Federal law," but courts may look to circuit law "to ascertain whether . . . the particular point in

13   issue is clearly established by Supreme Court precedent."  Marshall v. Rodgers, 569 U.S. 58, 64

14   (2013).

15   A state court decision is "contrary to" clearly established federal law if the decision

16   "contradicts the governing law set forth in [the Supreme Court's] cases."  Williams v. Taylor, 529

17   U.S. 362, 405 (2000).  A state court decision "unreasonably applies" federal law "if the state

18   court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to

19   the facts of the particular state prisoner's case."  Id. at 407-08.  It is not enough that the state court

20   was incorrect in the view of the federal habeas court; the state court decision must be objectively

21   unreasonable.  Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

22   Review under § 2254(d) is limited to the record that was before the state court.  Cullen v.

23   Pinholster, 563 U.S. 170, 180-181 (2011).  The question at this stage is whether the state court

24   reasonably applied clearly established federal law to the facts before it.  Id. at 181-182.  In other

25   words, the focus of the § 2254(d) inquiry is "on what a state court knew and did."  Id. at 182.

26   Where the state court's adjudication is set forth in a reasoned opinion, § 2254(d)(1) review is

27   confined to "the state court's actual reasoning" and "actual analysis."  Frantz v. Hazey, 533 F.3d

28   724, 738 (9th Cir. 2008) (en banc).  A different rule applies where the state court rejects claims

8

1  summarily, without a reasoned opinion.  In Richter, supra, the Supreme Court held that when a

2  state court denies a claim on the merits but without a reasoned opinion, the federal habeas court

3  must determine what arguments or theories may have supported the state court's decision, and

4  subject those arguments or theories to § 2254(d) scrutiny.  Richter, 563 U.S. at 102.

5                              DISCUSSION

6     I.      Claim One: Due Process

7             A.  Petitioner's Allegations and Pertinent State Court Record

8             Petitioner alleges that the trial court violated his Sixth Amendment right to fair notice of

9  the charges against him when it granted the prosecutor's motion to amend the prior conviction

10  allegation for his 1994 conviction, from assault by means of force likely to cause great bodily

11  injury to assault with a deadly weapon, after he had waived his right to a jury trial and the jury

12  had been discharged.  ECF No. 1 at 5, 21-22.

13            The criminal complaint filed June 6, 2013, 1 CT 219-22, the consolidated information

14  filed October 25, 2013, 1 CT 234-36, and the amended consolidated information filed March 11,

15  2014, 1 CT 245-48, each allege that petitioner had a 1994 conviction for assault in violation of

16  Penal Code Section 245(a)(1), making him "eligible for a three-strikes life sentence within the

17  meaning of Penal Code Sections 667(e)(2)(C) and 1170.12(c)(2)(C)."  During the preliminary

18  hearing on August 28, 2013, petitioner's counsel acknowledged that petitioner's 1994 conviction

19  was alleged as a strike.  2 CT 568.

20            On March 26, 2014, petitioner waived his right to a jury trial on the prior conviction

21  allegations, and the jury was discharged after finding petitioner guilty.  3 RT 845-50, 1038.  On

22  April 25, 2014, the prosecution moved to amend the information by interlineation to reflect that

23  petitioner's 1994 conviction was for assault with a deadly weapon rather than assault likely to

24  produce great bodily injury and the motion was granted over petitioner's objection.  3 RT 1047-

25  48.  The court proceeded to find that petitioner had suffered a prior strike conviction.  3 RT 1051.

26            B.  The Clearly Established Federal Law

27            The Sixth Amendment guarantees criminal defendants the right "to be informed of the

28  nature and cause of the accusation."  U.S. Const. amend. VI.  "No principle of procedural due

                                            9

1    process is more clearly established than . . . notice of the specific charge, and a chance to be heard

2    in a trial of the issues raised by that charge . . . ."  Cole v. Arkansas, 333 U.S. 196, 201 (1948).

3           "The indictment or information, however, need only 'contain[] the elements of the *offense*

4    *charged* and fairly inform[] a defendant of the charge against which he must defend.'"  LaMere v.

5    Risley, 827 F.2d 622, 624 (9th Cir. 1987) (alteration in original) (quoting Hamling v. United

6    States, 418 U.S. 87, 117 (1974)).  The state need not include in the charging document a prior

7    conviction that increases the maximum sentence, because a prior conviction is not an element of

8    the offense charged.  See Almendarez-Torres v. United States, 523 U.S. 224, 243-44 (1998);

9    United States v. Gerritsen, 571 F.3d 1001, 1009 (9th Cir. 2009) ("A statutory enhancement for a

10   prior conviction is not an element of the crime.  It need not be alleged in the indictment and

11   proven to a jury, but is determined by the court after the defendant has been convicted") (citations

12   omitted); United States v. Pacheco-Zepeda, 234 F.3d 411, 414-15 (9th Cir. 2000) (same).

13   Nevertheless, a criminal defendant is entitled to reasonable notice and an opportunity to be heard

14   on a recidivism charge.  Oyler v. Boles, 368 U.S. 448, 452 (1962).

15          C.  The State Court's Ruling

16          This claim was raised on direct appeal.  Because the California Supreme Court denied

17   discretionary review, the opinion of the California Court of Appeal constitutes the last reasoned

18   decision on the merits and is the subject of habeas review in this court.  See Ylst v. Nunnemaker,

19   501 U.S. 797 (1991); Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012).

20          The state appellate court ruled in pertinent part as follows:

21              Wells contends the trial court abused its discretion when it allowed
             amendment of the information, changing the allegation of a prior
22           1994 conviction for violation of section 245(a)(1) from assault by
             means of force likely to cause great bodily injury to assault with a
23           deadly weapon.  The claim lacks merit.

24              1.1 Background

25              Wells waived his right to a jury trial on the prior conviction
             allegations on March 26, 2014.  On April 25, 2014, prior to the court
26           trial on the alleged priors, the prosecution requested that the court
             amend the information by interlineation to allege the crime of
27           "assault with a deadly weapon, not assault by means of force likely
             to cause great bodily injury."  Over defense counsel's objection, the
28           trial court granted the prosecution's request stating, "I do not find

                                          10

that the requested amendments by interlineation change any true substantive aspect of the pleading.  Obviously, they are simply brought forward at this time to conform to the exhibits that we have in support of the priors trial."

1.2 Law

Due process requires that the defendant receive notice of the charges against him adequate to provide a meaningful opportunity to defend against them.  (People v. Seaton (2001) 26 Cal. 4th 598, 640; People v. Fernandez (2013) 216 Cal. App. 4th 540, 554.)  Generally, the preliminary hearing transcript provides the accused with the nature of the charges against the defendant, satisfying the due process requirement.  (People v. Jones (1990) 51 Cal. 3d 294, 317-318.)

Amendments to an information in a criminal case are governed by section 1009, which provides in relevant part as follows: "The court in which an action is pending may order or permit an amendment of an . . . information . . . for any defect or insufficiency, at any stage of the proceedings, . . . and the trial or other proceeding shall continue as if the pleading had been originally filed as amended, unless the substantial rights of the defendant would be prejudiced thereby . . . ."  If an amendment is allowed after the defendant has waived his or her right to a jury trial, a new jury waiver is required only if the amendment establishes a new offense or is otherwise considered substantial.  (People v. Gary (1968) 263 Cal. App. 2d 192, 197; accord, People v. Fernandez, supra, 216 Cal. App. 4th at p. 554 [section 1009 allows an amendment at any stage of the proceedings provided the amendment does not prejudice the substantive rights of the defendant and does not charge an offense not shown by the evidence taken at the preliminary hearing].)

The trial court's exercise of its discretion to grant a motion to amend under section 1009 is broad and will not be disturbed on appeal absent a clear abuse of discretion.  (People v. Jones (1985) 164 Cal. App. 3d 1173, 1178-1179.)

Analysis

Wells had adequate notice of the prior strike allegation regarding his 1994 assault conviction for violating section 245(a)(1).  The charging documents—the criminal complaint filed June 6, 2013, the consolidated information filed October 25, 2013, and the amended consolidated information filed March 11, 2014—all alleged Wells suffered a prior "serious and violent felony: the crime of Assault By Means of Force Likely to Cause Great Bodily Injury in violation of Section 245(a)(1) of the Penal Code, and is eligible for a three-strikes life sentence within the meaning of Penal Code Sections 667[, subdivision] (e)(2)(C) and 1170.12[, subdivision] (c)(2)(C)."

By virtue of the charging documents, Wells was on notice of the alleged prior strike.  Defense counsel acknowledged as much during the August 29, 2013 preliminary hearing, noting "the '94 case, if indeed it's a strike, it's alleged as such."

Wells asserts the trial court's exercise of discretion in deciding the motion to amend should have included consideration of the following factors set forth in People v. Valladoli (1996) 13 Cal. 4th 590: "(i) the reason for the late amendment, (ii) whether the defendant is surprised by the belated attempt to amend, (iii) whether the prosecution's initial failure to allege the prior convictions affected the defendant's decisions during plea bargaining, if any, (iv) whether other prior felony convictions had been charged originally, and (v) whether the jury has already been discharged." (Id. at pp. 607-608.) Wells argues the Valladoli factors favored denial of the motion because the request to amend came very late in the proceedings and after the jury had already been discharged, the prosecutor gave no "proper reason" for the delay in seeking amendment, and the "belated attempt" to amend came as a surprise to Wells.

In Valladoli, the defendant unsuccessfully challenged the Court of Appeal's decision allowing postverdict amendment of the information to include prior felony convictions mistakenly stricken from the complaint. There, the defendant argued section 969a, which applies when "'a pending indictment or information does not charge all prior felonies of which the defendant has been convicted,'" did not permit such postverdict amendment and violated his federal and state rights to due process and protections against double jeopardy. (People v. Valladoli, supra, 13 Cal. 4th at pp. 594-595, 605, 609.)

Here, on the other hand, the prosecution was not attempting to amend the information to include prior convictions not previously alleged. Rather, the prosecution sought, and the trial court allowed, amendment of the *existing* prior strike allegations to conform to the evidence.

Wells contends the amendment resulted in a substantive change in that the existing allegation of assault by means of force likely to produce great bodily injury required proof of additional facts in order to constitute a serious felony. He argues the amendment does not conform the allegations to the exhibits, as evidenced by the notation on the 1994 abstract of judgment indicating defendant's conviction for "ASSAULT GREAT BODILY IN[JURY]." We disagree.

As previously discussed, the charging documents consistently alleged Wells's 1994 conviction for violating section 245(a)(1) as a strike. The requested amendment neither added a new charge nor changed the existing strike allegation, other than to correct the description of the crime to conform to proof. In that regard, the evidence submitted in support of the allegation revealed that Wells was charged in 1994 with "assault great bodily injury *and with deadly weapon, in violation of Penal Code section 245(a)(1)*" by assaulting the victim "*with a deadly weapon . . . a sharpened instrument*, and by means of force likely to produce great bodily injury." (Italics added.) Indeed, Wells's own declaration twice states that Wells pleaded guilty to section 245(a)(1), "*assault with a deadly weapon*." (Italics added.) Other 1994 trial court documents, including the abstract of judgment, reflect Wells's conviction for violating section "245(a)(1)." While the abstract also describes the crime as "ASSAULT GREAT BODILY IN[JURY]," that

12

1  description is inconsistent with Wells's declaration regarding his
   plea.

2

3  We conclude the amendment conformed the amended consolidated
   information to proof and did not result in a substantive change to the
   charges against Wells.  Therefore, the trial court did not abuse its
4  discretion in granting the motion to amend.

5  ECF No. 13 at 13-15 (alterations in original).

6          D.  Objective Reasonableness Under § 2254(d)

7          Although the Court of Appeal did not cite any federal law in making its due process

8  determination, it clearly and accurately set out the notice requirement that the Sixth Amendment

9  guarantees.  The Court of Appeal's conclusion that petitioner received adequate notice was not

10 objectively unreasonable under that standard.  Accordingly, the state court's resolution of the

11 issue may not be disturbed by the federal court.  See Early v. Packer, 537 U.S. 3, 8 (2002) (per

12 curiam) (state court need not cite or even be aware of governing United States Supreme Court

13 precedent for AEDPA deference to apply).

14         Oyler v. Boles, supra, held that a criminal defendant is entitled to reasonable notice on

15 recidivist charges, and the record clearly demonstrates that petitioner was given such notice.  As

16 the Court of Appeal found, petitioner's 1994 conviction was consistently and at all times alleged

17 as a conviction for the violation of section 245(a)(1) of the California Penal Code and as a strike

18 within the meaning of sections 667(e)(2)(C) and 1170.12(c)(2)(C) of the California Penal Code,

19 and there are no facts indicating, nor does petitioner allege, that there was any confusion or

20 ambiguity as to the prior conviction at issue or the potential for an increased sentence.[7]  See

21 United States v. Wilson, 7 F.3d 828, 838 (9th Cir. 1993) (due process requires notice of prior

22 [7]  In fact, prior to the start of trial, petitioner's counsel filed a motion to dismiss the 1994
   conviction on two separate grounds, including its constitutional validity.  1 CT 35-40.
23 Furthermore, although the Court of Appeal did not rely on the fact in concluding that petitioner
   had adequate notice, the record reflects that on March 11, 2014, during argument on the parties'
24 motions in limine, the judge specifically inquired into whether petitioner's 1994 plea was for
   "assault with a deadly weapon or assault with force likely."  1 RT 54.  The prosecutor responded
25 that it was for assault with a deadly weapon and provided a brief summary of the facts underlying
   the offense.  Id.  Petitioner was thereby put on further notice of the nature of the recidivist charge.
26 See Sheppard v. Rees, 909 F.2d 1234, 1236 n.2 (9th Cir. 1989) (explaining that while "precise
   formal notice is certainly the most reliable way to comply with the Sixth Amendment," adequate
27 notice of the nature and cause of the accusation could be obtained from other sources such as "a
   complaint, an arrest warrant, or a bill of particulars" or even "during the course of a preliminary
28 hearing").

13

1  convictions to be used for enhancement purposes "must be sufficient to allow a defendant to

2  investigate and object to the validity of the prior convictions").

3      To the extent petitioner claims that reasonable notice required that he be notified of the

4  recidivist charges against him prior to the waiver of his state statutory right to a jury trial on his

5  prior convictions, no United States Supreme Court case recognizes such a right, and the state

6  court cannot have unreasonably adjudicated the claim within the meaning of § 2254(d).  See

7  Wright v. Van Patten, 552 U.S. 120, 125-26 (2008) (per curiam) (where there is no Supreme

8  Court precedent that controls a legal issue raised by a habeas petitioner in state court, the state

9  court's decision cannot be contrary to, or an unreasonable application of, clearly established

10  federal law).

11      To the extent petitioner's claim is based on alleged violation of state law in allowing the

12  amended information after the jury was discharged, see ECF No. 29 at 6-8, it is not cognizable in

13  this court.  See Lewis v. Jeffers, 497 U.S. 764, 780 (1990) ("federal habeas corpus relief does not

14  lie for errors of state law").  Furthermore, any implication that petitioner's constitutional rights

15  were violated because the late amendment deprived him of a jury trial on his prior convictions

16  fails to state a cognizable claim.  See Davis v. Woodford, 446 F.3d 957, 963 (9th Cir. 2006)

17  ("The Constitution permits prior convictions to be used to enhance a sentence, without being

18  submitted to a jury, so long as the convictions were themselves obtained in proceedings that

19  required the right to a jury trial and proof beyond a reasonable doubt." (citing Apprendi v. New

20  Jersey, 530 U.S. 466, 488 (2000); Jones v. United States, 526 U.S. 227, 249 (1999); United States

21  v. Tighe, 266 F.3d 1187, 1193-94 (9th Cir. 2001))).  "The fact that Petitioner had a state statutory

22  right to a jury trial on his prior convictions, does not avail him."  Id. (internal citation omitted).

23      II.     Claim Two: Insufficient Evidence Prior Conviction Constituted Serious Felony

24              A.  Petitioner's Allegations and Pertinent State Court Record

25      Petitioner alleges that there was insufficient evidence to support the trial court's finding

26  that his 1994 prior conviction was a serious felony within the meaning of the three strikes law.

27  ECF No. 1 at 7, 23-24.

28      In support of the allegation that petitioner's 1994 conviction was for assault with a deadly

14

weapon, a serious felony which constituted a strike, the prosecutor submitted certified documents from the 1994 proceedings that included the following documents: (1) the felony complaint charging petitioner with "ASSAULT GREAT BODILY INJURY AND WITH DEADLY WEAPON" and alleging that he assaulted the victim "with a deadly weapon . . . a sharpened instrument, and by means of force likely to produce great bodily injury;" (2) the trial court's felony docket reflecting a charge for the violation of section 245(a)(1) of the California Penal Code; (3) the minute order for sentencing describing the assault conviction as "Count 1—PC 245(a)(1)—a felony;" (4) defendant's declaration of guilty plea which reflects in two places that petitioner pled guilty to "P.C. 245a(1) [sic] assault with a deadly weapon;" and (5) the abstract of judgment describing the assault conviction as "ASSAULT GREAT BODILY IN." 1 CT 124-34.[8] Petitioner presented no evidence, and the trial court found beyond a reasonable doubt that he had "suffered a prior strike conviction within the meaning of Penal Code Section 667(e)(2)(C) and 1170.129(c)(2)(C), along with a five-year prior conviction within the meaning of Penal Code Section 667(a)." 3 RT 1049-51.

### B.  The Clearly Established Federal Law

Federal habeas relief is generally unavailable for an alleged error in the interpretation or application of state sentencing laws by a state trial court or appellate court.  See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (per curiam) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." (citing Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Mullaney v. Wilbur, 421 U.S. 684, 691 (1975))); Richmond v. Lewis, 506 U.S. 40, 50 (1992) (holding that the question to be decided by a federal court on habeas corpus is not whether the state committed state-law error, but rather, whether the state court's action was "so arbitrary or capricious" as to constitute an independent violation of the federal constitution (citation omitted)).  "[S]tate courts are the ultimate expositors of state law," and a federal habeas court is bound by the state's construction except when it appears that its interpretation is "an obvious

---

[8]  More legible copies of the documents are attached to petitioner's state habeas petition in Case No. 15HC00020.  Lodged Doc. 10.

1  subterfuge to evade consideration of a federal issue." Mullaney, 421 U.S. 684, 691 & n.11 (1975)

2  (citation omitted).

3      Sufficient evidence supports a conviction if, "after viewing the evidence in the light most

4  favorable to the prosecution, *any* rational trier of fact could have found the essential elements of

5  the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also

6  McDaniel v. Brown, 558 U.S. 120, 130-31 (2010) (per curiam); United States v. Okafor, 285 F.3d

7  842, 847-48 (9th Cir. 2002) (applying the clearly established Jackson standard to review whether

8  sufficient evidence supported the fact of a prior conviction).  Sufficiency of the evidence claims

9  raised in habeas proceedings are reviewed "with explicit reference to the substantive elements of

10  the criminal offense as defined by state law." Jackson, 443 U.S. at 324 n.16.  In determining

11  whether sufficient evidence supports a conviction, a federal court is bound by "a state court's

12  interpretation of state law." Richey, 546 U.S. at 76.

13      C.  The State Court's Ruling

14      This claim was exhausted on direct appeal, and the last reasoned state court decision is the

15  opinion of the Court of Appeals.  That opinion is therefore the subject of review under § 2254(d).

16  Ortiz, 704 F.3d at 1034.

17      The state appellate court ruled in pertinent part as follows:

18
19      Wells contends there was insufficient evidence to support the trial
        court's finding that his 1994 conviction for violation of section
20      245(a)(1) was a serious felony within the meaning of the three strikes
        law.  The claim lacks merit.

21      As set forth in People v. Delgado (2008) 43 Cal.4th 1059 (Delgado),
        "[t]he People must prove each element of an alleged sentence
22      enhancement beyond reasonable doubt.  [Citation.]  Where, as here,
        the mere fact that a prior conviction occurred under a specified
23      statute does not prove the serious felony allegation, otherwise
        admissible evidence from the entire record of the conviction may be
24      examined to resolve the issue.  [Citations.]

25      "A common means of proving the fact and nature of a prior
        conviction is to introduce certified documents from the record of the
26      prior court proceeding and commitment to prison, including the
        abstract of judgment describing the prior offense.  [Citations.]

27      "'[The] trier of fact is entitled to draw reasonable inferences from
        certified records offered to prove a defendant suffered a prior
28      conviction . . . .' [Citations.] . . .

16

"Thus, if the prosecutor presents, by such records, prima facie evidence of a prior conviction that satisfies the elements of the recidivist enhancement at issue, and if there is no contrary evidence, the fact finder, utilizing the official duty presumption, may determine that a qualifying conviction occurred.  [Citations.]

"However, if the prior conviction was for an offense that can be committed in multiple ways, and the record of the conviction does not disclose how the offense was committed, a court must presume the conviction was for the least serious form of the offense. [Citations.]  In such a case, if the statute under which the prior conviction occurred could be violated in a way that does not qualify for the alleged enhancement, the evidence is thus insufficient, and the People have failed in their burden.  [Citations.]

"On review, we examine the record in the light most favorable to the judgment to ascertain whether it is supported by substantial evidence. In other words, we determine whether a rational trier of fact could have found that the prosecution sustained its burden of proving the elements of the sentence enhancement beyond a reasonable doubt." (Delgado, at pp. 1065-1067.)

Section 245(a)(1) "punishes assault committed *either* by means 'likely to produce great bodily injury' (GBI), *or* by use of 'a deadly weapon . . . other than a firearm.'  Only the latter version qualifies as a serious felony."  (Delgado, supra, 43 Cal.4th at p. 1063.)

At the time of Wells's prior conviction in 1994, section 245(a)(1) defined assault to include, "[a]ny person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm *or* by any means of force likely to produce great bodily injury . . . ."  (Former § 245, subd. (a)(1), italics added, as amended by Stats. 1993, ch. 369, § 1.)

As proof of Wells's 1994 conviction, the People introduced a packet of certified documents, including the felony complaint, the trial court's felony docket and minute order after pronouncement of judgment, defendant's declaration of guilty plea, and the abstract of judgment.  The charging complaint alleged Wells committed "assault great bodily injury *and with deadly weapon*, in violation of Penal Code section 245(a)(1)" *by assaulting the victim "with a deadly weapon . . . a sharpened instrument*, and by means of force likely to produce great bodily injury."  (Italics added.)  Wells's declaration attests to the charge against him of "P.C. 245a(1) [sic ] *assault with a deadly weapon*," and reflects his plea of guilty to "P.C. 245a(1) [sic ] *assault with a deadly weapon*."  (Italics added.)  The abstract of judgment noted that, on July 21, 1994, Wells was convicted of section "245(a)(1)" for the crime of "ASSAULT GREAT BODILY IN[JURY]."  The remainder of the documents in the packet reflected Wells's conviction for violating section 245(a)(1) without further explanation.  Wells did not present any evidence regarding the prior conviction.

While the 1994 abstract refers only to the great bodily injury prong of section 245(a)(1), that notation is contradictory to Wells's own

17

declaration, the authenticity and admissibility of which is not in dispute, that he pleaded guilty to section 245(a)(1) "assault with a deadly weapon." Given that the declaration reflects Wells's own attestation, the contradictory clerical notation in the abstract does not reliably indicate Wells's prior conviction was for anything other than assault "with a deadly weapon."

Wells notes the trial court failed to make a specific finding that the evidence established the prior conviction was for assault with a deadly weapon, an objection he did not lodge below. To the extent this observation, made in passing and without citation to authority, is intended to constitute an argument, it must be deemed forfeited. (Cal. Rules of Court, rule 8.204(a)(1)(B) [each point in appellate brief must be supported by citation of authority]; <u>Atchley v. City of Fresno</u> (1984) 151 Cal.App.3d 635, 647 [lack of authority or analysis constitutes forfeiture].)

We conclude there is substantial evidence to support the trial court's finding that Wells's 1994 conviction for violating section 245(a)(1) was a serious felony within the meaning of the three strikes law.

ECF No. 13 at 15-16 (alterations in original).

### D. Objective Reasonableness Under § 2254(d)

The state court's on-the-merits rejection of petitioner's sufficiency of the evidence claim is entitled to deference under AEDPA. <u>See</u> <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1274 (9th Cir. 2005) (holding that a federal habeas petitioner's <u>Jackson</u> claim is subject to deferential review under AEDPA). Although the state court did not expressly cite <u>Jackson</u> in rejecting petitioner's claim, the state court's analysis was consistent with, and a reasonable application of, the <u>Jackson</u> standard. <u>See</u> <u>id.</u> at 1274-75 & n.12 (although though no relevant federal law was cited by state court "the question for [federal court] remains whether the state court in substance made an objectively unreasonable application of the [federal] standards for sufficiency of the evidence"); <u>see also</u> <u>People v. Johnson</u>, 26 Cal. 3d 557, 575-78 (1980) (explaining that a state-law sufficiency of the evidence review in California expressly follows the <u>Jackson</u> standard).

Petitioner argues here, as he did in state court, that the documents submitted by the prosecution were ambiguous as to whether the assault conviction was for assault with a deadly weapon or for assault by means likely to produce great bodily injury. In reviewing a claim of sufficiency of the evidence, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the

18

1    record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must

2    defer to that resolution."  Jackson, 443 U.S. at 326.

3        In rejecting petitioner's sufficiency of the evidence claim, the state appellate court

4    properly viewed the evidence in the light most favorable to the state court judgment and

5    considered all reasonable inferences in support of that judgment in accordance with the Jackson

6    standard.  The state court then reasonably found that "substantial evidence" supported a finding

7    that the assault conviction "was a serious felony within the meaning of the three strikes law."

8    Rejection of the claim on this basis was consistent with, and a reasonable application of the

9    Jackson standard, which requires that any rational trier of fact could have found true beyond a

10   reasonable doubt that petitioner's prior assault conviction constituted a serious felony.  See

11   Jackson, 443 U.S. at 319.

12       III.    Claim Three: Ineffective Assistance of Counsel

13           A.  Petitioner's Allegations and Pertinent State Court Record

14       Petitioner alleges that trial counsel, James Warden, provided ineffective assistance.  ECF

15   No. 1 at 27-29, 31-33.  First, he asserts that counsel had a conflict of interest due to petitioner's

16   failure to pay counsel's fees by the agreed upon date that resulted in counsel's failure to

17   investigate his witnesses, file any pretrial motions except a Romero motion, call any witnesses on

18   petitioner's behalf, cross-examine Mr. Allenbaugh, or present any defense.  Id. at 27-28.  Second,

19   he claims that counsel was ineffective because he did not call any of the five individuals who

20   were listed as defense witnesses.  Id. at 29.

21       In support of his claim, petitioner provides a copy of a motion to withdraw as counsel that

22   is signed and dated February 7, 2014, and part of a declaration, ECF No. 1 at 43-49, both of

23   which were presented to the California Supreme Court, Lodged Doc. 15.

24       The trial court record reflects that Mr. Warden substituted in as counsel of record on

25   December 3, 2013, and the trial was set for January 14, 2014, though it was subsequently vacated

26   and re-set several times, twice on petitioner's motion.  1 CT 5-6, 14-26.  On February 7, 2014,

27   Mr. Warden requested that a motion to withdraw as counsel be scheduled for hearing on February

28   11, 2014.  1 CT 27.  At that time, the trial was scheduled for February 25, 2014.  1 CT 5, 27.  On

1    February 10, 2014, Mr. Warden requested that the hearing on the motion to withdraw be moved

2    to February 14, 2014, to allow further time to resolve the issue.  1 CT 28.  On February 13, 2014,

3    Mr. Warden requested that the motion be dropped from the calendar and the trial date confirmed

4    because the issues between he and petitioner had been resolved.  1 CT 29.  The February 25,

5    2014, trial date was later vacated and re-set to March 6, 2014.  1 CT 7.

6          Trial was scheduled to begin on March 6, 2014, but was continued to March 12, 2014, to

7    allow counsel for petitioner and his co-defendant to review recordings of jail phone calls and

8    visits that had been provided the day before.  1 RT 26-35.  On March 11, 2014, defense counsel

9    filed a trial brief in which he moved in limine to exclude the introduction of any photographic

10   line-ups, to strike the 1994 conviction alleged as a strike, to exclude statements made by Mr.

11   Allenbaugh regarding petitioner's recent release from prison, and to bifurcate the strike priors.

12   The brief also joined in several of petitioner's co-defendant's motions in limine and responded to

13   the prosecution's motions related to the admission of petitioner's prior statements and prior

14   convictions for the purposes of impeachment.  1 CT  45-53.  Counsel filed a separate motion

15   seeking to strike the 1994 prior conviction and a list of five potential impeachment witnesses.  1

16   CT 35-40, 54-55.

17          At trial, Mr. Warden cross-examined all but two of the prosecution's witnesses: Barbara

18   Brown, the sister of one of the victims, and Steve Nakamura, the officer who arrested petitioner.

19   1 RT 195-210, 249-51, 429-54, 480, 528-33, 536, 557-67, 577-80, 588, 596-97.  During the

20   cross-examination of Allenbaugh, the trial judge called counsel to the sidebar and advised no

21   further questioning regarding the type of guns that were stolen from Allenbaugh would be

22   allowed.  1 RT 435-36, 476.  Mr. Warden objected, and those objections were later placed on the

23   record.  1 RT 476-78.  On petitioner's behalf, counsel called Deputy Ryan Smith, who testified

24   about taking a report of petitioner's assault from Woodvine.  2 RT 617-22.

25          B.  The State Court's Ruling

26          This claim was presented in state habeas.  In the superior court, petitioner alleged that

27   counsel had a conflict of interest and failed to file the motion to withdraw which showed that

28   counsel "did not view discovery and had no financial motivation to prepare a defence [sic]."

1    Lodged Doc. 11.  The petition was denied for failure to state a prima facie case.  <u>Id.</u>  The petitions

2    filed in the court of appeal and California Supreme Court expanded the claim by alleging that due

3    to the conflict, counsel's conduct was deficient because he did not review any discovery, waived

4    the opening statement and closing arguments, failed to file any defense motions before or after

5    trial, did not call any of the witnesses on petitioner's witness list, and did not advise petitioner of

6    a plea bargain offered by the district attorney.  Lodged Docs. 13, 15.  The California Court of

7    Appeal denied the petition without comment or citation, Lodged Doc. 13, and the California

8    Supreme Court denied the claim with citation to <u>In re Clark</u>, 5 Cal. 4th 750, 797-98 (1993),

9    Lodged Doc. 15.

10                   C.  <u>Standard of Review</u>

11          Section 2254 provides that claims previously adjudicated on the merits by a state court

12   can only support federal habeas relief if the state court judgment was objectively unreasonable in

13   its application of federal law or its determination of facts.  28 U.S.C. § 2254(d).  These standards

14   apply whether or not the state court explained the basis for its decision, <u>Harrington v. Richter</u>, 562

15   U.S. 86, 100 (2011), but do not apply if the state court judgment rested exclusively on procedural

16   grounds because such a judgment does not adjudicate the merits, <u>Cone v. Bell</u>, 556 U.S. 449, 472

17   (2009).

18          The California Supreme Court's citation to <u>Clark</u> indicates that it denied the petition as

19   untimely and/or successive.  <u>See In re Clark</u>, 5 Cal. 4th at 797-98 ("successive and/or untimely

20   petitions will be summarily denied" absent facts establishing a "fundamental miscarriage of

21   justice").  As such, de novo review—rather than review for objective unreasonableness under §

22   2254(d)—is appropriate even though the superior court ruled on the merits of the claims.  <u>See</u>

23   <u>Cone</u>, 556 U.S. at 472 (de novo review applies where state court denies claim on procedural

24   grounds and does not reach the merits); <u>see also</u> <u>Berkley v. Miller</u>, 2014 WL 2042249, at *5,

25   2014 U.S. Dist. LEXIS 68643, at *12 (C.D. Cal. April 2) (declining to disregard the California

26   Supreme Court's procedural denial and applying de novo review because "[t]he relevant state

27   decision for purposes of the Court's habeas review is the procedural denial by the California

28   Supreme Court"), <u>adopted in full</u>, 2014 WL 2048167, 2014 U.S. Dist. LEXIS 68645 (C.D. Cal.

1    May 15, 2014).  However, respondent argues that the California Supreme Court's citation to

2    Clark does not unambiguously indicate a failure to reach the merits and petitioner's ineffective

3    assistance of counsel claim is therefore subject to the constraints on habeas relief imposed by §

4    2254.  ECF No. 13 at 8 n.8.  He asserts that because the pages cited set out the exception to the

5    procedural bar, the court could have found that the exception applied and as a result reached the

6    merits of the claim.  Id.

7         Regardless, this is not a case in which the outcome is determined by the standard of

8    review.  For the reasons explained below, the claim fails even under the more lenient de novo

9    standard.  See Berghuis v. Thompkins, 560 U.S. 370, 390 (2010) (where claim fails under de

10   novo standard of review, it would also fail under AEDPA's heightened standard of deference to

11   state court judgments).

12              D.  Law Governing Ineffective Assistance of Counsel

13        To establish a constitutional violation based on ineffective assistance of counsel, a

14   petitioner must show (1) "that counsel's representation fell below an objective standard of

15   reasonableness," and (2) that counsel's deficient performance prejudiced the defense.  Strickland

16   Washington, 466 U.S. 668, 688, 692 (1984).  The proper measure of attorney performance is

17   "reasonableness under prevailing professional norms."  Id. at 688.  In evaluating counsel's

18   performance, the court applies a strong presumption that counsel's representation fell "within the

19   wide range of reasonable professional assistance."  Id. at 689.  Counsel's strategic choices are

20   generally accorded deference, but only if those decisions are reasonable and are based on

21   reasonable investigations, research, and judgments.  Id. at 690-91; see also Jones v. Wood, 114

22   F.3d 1002, 1010 (9th Cir. 1997) (strategic choices are not immune from challenge—they must be

23   reasonable); Jennings v. Woodford, 290 F.3d 1006, 1014 (9th Cir. 2002) (to be reasonable,

24   tactical choices require sufficient evidentiary basis).

25        Prejudice means that the error actually had an adverse effect on the defense and that there

26   is a reasonable probability that, but for counsel's errors, the result of the proceeding would have

27   been different.  Strickland, 466 U.S. at 693-94.  "A reasonable probability is a probability

28   sufficient to undermine confidence in the outcome."  Id. at 694.  A reviewing court need not

1   address both prongs of the <u>Strickland</u> test if the petitioner's showing is insufficient as to one

2   prong.  <u>Id.</u> at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of

3   sufficient prejudice, which we expect will often be so, that course should be followed.").

4          The right to effective assistance of counsel also carries with it "a correlative right to

5   representation that is free from conflicts of interest."  <u>Wood v. Georgia</u>, 450 U.S. 261, 271 (1981)

6   (citations omitted).  "In order to establish a violation of the Sixth Amendment, a defendant who

7   raised no objection at trial must demonstrate that an actual conflict of interest adversely affected

8   his lawyer's performance."  <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 348 (1980).  This is a lesser

9   showing than probable effect on the outcome of the trial.  <u>Id.</u> at 349-50 ("[A] defendant who

10   shows that a conflict of interest actually affected the adequacy of his representation need not

11   demonstrate prejudice in order to obtain relief."); <u>Mickens v. Taylor</u>, 535 U.S. 162, 172-73

12   (2002).  "Actual conflict of interest" means a conflict that actually affects counsel's performance,

13   rather than "a mere theoretical division of loyalties."  <u>Id.</u> at 171.  "However, in <u>Mickens</u>, the

14   Supreme Court explicitly limited this presumption of prejudice for an actual conflict of interest

15   (also known as the "<u>Sullivan</u> exception") to cases involving 'concurrent representation.'"

16   <u>Rowland v. Chappell</u>, 876 F.3d 1174, 1192 (9th Cir. 2017) (citing <u>Mickens</u>, 535 U.S. at 175); <u>see</u>

17   <u>also</u> <u>Earp v. Ornoski</u>, 431 F.3d 1158, 1184 (9th Cir. 2005) ("The <u>Mickens</u> Court specifically and

18   explicitly concluded that <u>Sullivan</u> was limited to joint representation[.]").

19          E.  <u>Analysis</u>

20          With respect to the conflict-of-interest portion of petitioner's ineffective assistance claim,

21   he is not alleging a conflict based on concurrent representation but contends that trial counsel had

22   a financial conflict because petitioner did not pay his fees by the agreed upon date.  ECF No. 1 at

23   27.  It is therefore unclear whether petitioner would be entitled to the lesser showing required by

24   <u>Sullivan</u>.  However, even if the <u>Sullivan</u> standard did apply to the type of conflict at issue here,

25   the claim would fail because the record does not support a finding that counsel's performance was

26   adversely affected by his pecuniary interest.  <u>See</u> <u>Sullivan</u>, 446 U.S. at 349-50 (actual conflict of

27   interests exists if adequacy of representation is affected by divided loyalty); <u>Mickens</u>, 535 U.S. at

28   71 (same).

1    Although petitioner argues that trial counsel's performance was deficient in a number of

2    ways because he had no financial motivation to perform adequately, petitioner has alleged no

3    facts that would demonstrate the existence of an actual conflict of interest within the meaning of

4    Sullivan.  The allegations that counsel's performance was adversely affected by petitioner's

5    failure to pay by the agreed upon date are conclusory at best, and in most instances are directly

6    contradicted by the record.  See James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory

7    allegations which are not supported by a statement of specific facts do not warrant habeas

8    relief.").

9    As an initial matter, petitioner fails address whether he paid counsel's fees prior to trial

10   and therefore fails to establish that a financial conflict existed after February 13, 2014, when

11   counsel requested the motion to withdraw be taken off the calendar because the conflict with

12   petitioner had been resolved.  The motion to withdraw was based almost entirely on petitioner's

13   failure to pay counsel's fees, ECF No. 1 at 43-49, and counsel's representation to the court that

14   the conflict had been resolved therefore indicates that petitioner either paid counsel's fees or that

15   counsel and petitioner reached some other agreement regarding the payment of fees.  Absent

16   evidence that counsel's fees remained unpaid, the claim fails because petitioner has not shown

17   that counsel's pecuniary interest was in conflict with his continued representation of petitioner.

18   See Sullivan, 446 U.S. at 350 ("[U]ntil a defendant shows that his counsel actively represented

19   conflicting interests, he has not established the constitutional predicate for his claim of ineffective

20   assistance." (citation omitted)).  However, even assuming counsel was not paid, petitioner has not

21   demonstrated that counsel's representation was adversely affected as a result.

22   Petitioner relies heavily on the motion to withdraw and partial declaration that was drafted

23   by counsel but ultimately not filed.  He argues that the documents, signed on February 7, 2014—

24   less than thirty days before the start of trial—contain counsel's admission that "he never reviewed

25   the record handed over to him (12/03/13) [and] has not done any type of pre-trial investigation."

26   ECF No. 1 at 27.  However, while the motion to withdraw indicates that as of February 7, 2014,

27   counsel had not been paid any portion of his fee, rather than admitting to a complete failure to act,

28   the motion to withdraw and earlier filed motions to continue indicate that counsel had not

24

*completed* his preparations or review of the record.[9]  ECF No. 29 at 46-50; 1 CT 15, 20, 23.
Regardless, even if the court assumes that counsel had not performed any work on petitioner's
case up to that point, there is no evidence that counsel failed to review petitioner's records and
make necessary preparations between February 13, 2014—when he notified the court that the
conflict had been resolved—and March 12, 2014—when trial began.

Petitioner points to the transcript of the March 6, 2014 proceedings as evidence that
counsel failed to timely review discovery, emphasizing counsel's statement that he needed time to
listen to over nine hours of recordings of jail calls and visits.  ECF No. 29 at 16.  Review of the
transcript reveals that the tapes referenced had been produced the previous day.  1 RT 27-30.  It is
also clear from the record that counsel was familiar with the facts of the case.  He sought to
impeach Allenbaugh and Woodvine by highlighting their previous inconsistent statements and
omissions in the information provided to investigators and officers.  1 RT 206-07, 237-38, 448-
49, 453; 2 RT 560-61, 619-20; 3 RT 825-26, 828.  Furthermore, while petitioner argues that
counsel failed to investigate his five impeachment witnesses, ECF No. 1 at 27-29, it appears that
four of the witnesses were investigated by prior counsel,[10] ECF No. 29 at 35-37, 55-56, and
petitioner admits that the witnesses "could not show contradictory evidence," id. at 15.  Although
counsel's second motion to continue indicated he was planning to conduct a separate
investigation of the witnesses, 1 CT 23, there is no evidence that he subsequently failed to

_____

[9]  The February 3, 2014 motion to continue included the following statement:

> With regard to the Christopher Wells matter, there are at least 1300
> pages of discovery and 9 DVD's.  I have not completed my legal
> research on attacking the prior conviction(s), I have not completed
> preparation of my cross-examination of prosecution witnesses, I have
> not finished a complete review and analysis of the entire 1300 pages
> of discovery and the DVD's, and there are a [sic] four witnesses that
> had been previously subpoenaed by the prior attorney for whom I
> have not conducted my own independent investigation and analysis.
> Those four witnesses also will need to be placed under subpoena
> again.

1 CT 23.
[10]  The fifth witness appears to be the investigator who interviewed the other four witnesses.  ECF
No. 29 at 35, 55-56.

25

1   conduct such an investigation or that the failure, if it occurred, was based on counsel's financial

2   motivations rather than a decision that further investigation was unnecessary.

3        Petitioner also alleges that, because of the alleged financial conflict, counsel failed to file

4   any pretrial motions other than a Romero motion.  ECF No. 1 at 33; ECF No. 29 at 14.  However,

5   the record reflects that the trial brief included several motions in limine, 1 CT  45-53, and

6   petitioner fails to identify what other motions counsel should have filed but did not file because of

7   the financial conflict.  Instead, petitioner questions why Mr. Warden did not file a motion to sever

8   when his previous counsel had stated that he would "most likely" do so at a later date, while

9   simultaneously acknowledging that this could have been a tactical decision.  ECF No. 29 at 14.

10  He further argues that counsel failed to submit a handwritten motion drafted by petitioner

11  "challenging the constitutionality of amending the 1994 case," but provides no evidence that this

12  decision was financially motivated.  Id. at 15.  The cited portion of the record indicates that this

13  motion did not challenge the amendment of the information with regard to the 1994 case, it

14  supplemented counsel's motion challenging the constitutionality of the 1994 plea agreement; the

15  record also reflects that counsel did seek to submit the document to the court for consideration,

16  though he had not yet had a chance to thoroughly review it.  1 RT 89.  The court instructed

17  counsel to wait, and make a decision about filing the motion after he had completed his review.

18  Id.  This record does not support a conclusion that counsel's decision not to file the motion was

19  due to a conflict with his own financial interests.

20        The petition also alleges that counsel failed to cross-examine Mr. Allenbaugh, ECF No. 1

21  at 28, though the traverse alters the claim to allege that "Counsel failed to make an on-the-record

22  Evid. Code Section 352 objection . . . when the court disallowed questioning of James

23  Allenbaugh's allegedly 'stolen' firearms," ECF No. 29 at 14.  Both allegations are clearly

24  disproved by the record, which reflects both that counsel cross-examined Allenbaugh and that his

25  objections regarding the disallowance of questions related to Allenbaugh's firearms were placed

26  on the record.  1 RT 429-54, 476-78.  Petitioner identifies no other deficiencies with counsel's

27  cross-examination.

28        Petitioner's traverse additionally alleges that counsel's conflict led him to waive opening

26

1  statements and closing arguments during the trial on petitioner's prior convictions and that there

2  was no tactical advantage in doing so.  ECF No. 29 at 15.  However, the record reflects that the

3  court had already denied the motion to strike petitioner's 1994 conviction under either Romero or

4  as unconstitutional, the prosecutor also waived opening statements and closing arguments, the

5  trial was before the court rather than a jury, and the only evidence submitted was in the form of

6  certified documents.  3 RT 1045-46, 1048-51.  Based on this record, the court cannot find that the

7  waiver of opening and closing arguments in the context of petitioner's priors trial was motivated

8  by counsel's financial interest.

9  　　　Finally, petitioner alleges that as a result of the financial conflict, counsel failed to call any

10  witnesses on petitioner's behalf and that that failure constituted ineffective assistance of counsel

11  in its own right.  ECF No. 1 at 27-29.  However, the record shows that counsel called Deputy

12  Smith on petitioner's behalf, 2 RT 617-22, and petitioner fails to identify who, other than the five

13  impeachment witnesses, counsel should have called in his defense, ECF No. 1 at 27-29, 31-33.

14  To the extent he argues counsel should have called the five impeachment witnesses, the petition

15  does not indicate the contents of their expected testimony or even whose testimony they would

16  have impeached.  See Dows v. Wood, 211 F.3d 480, 486 (9th Cir. 2000) (denying ineffective

17  assistance of counsel claim based on lack of preparation for failure to call witnesses when no

18  affidavits were submitted to support petitioner's assertion as to what testimony would have been

19  provided).  The traverse further admits that "the defense witnesses could not show contradictory

20  evidence."  ECF No. 29 at 15.  Instead, petitioner argues that "at least one (1) witness, Mike

21  Rodgers, could be a character witness" because his testimony would have shown that Woodvine

22  had "a prior history of being less than truthful which lessens his credibility" based on Rodgers

23  telling the investigator that "I never knew when Rich (Mr. Woodvine) was telling the truth.  For

24  example, he said his motorhome was broken into, but then I heard from someone that his

25  motorhome was really not broken into."  Id. (quoting interview summary (ECF No. 29 at 35-36)).

26  　　　Although petitioner argues that Rodgers' testimony would have been helpful to his case

27  because it attacked Woodvine's credibility, there is no evidence that the decision not to call

28  Rodgers to testify was a result of counsel's alleged financial conflict or that the decision was

1  unreasonable.  Assuming that Rodgers' testimony would be consistent with summary of the

2  investigator's interview provided by petitioner, and assuming that Rodgers' testimony would be

3  admissible, that does not mean that a reasonable defense lawyer should have presented it or that

4  counsel's failure to do so was due to a financial conflict.  There is no information regarding the

5  nature or duration of Rodgers' relationship with Woodvine, no indication that Rodgers had any

6  knowledge of the assault, and Rodgers stated that he could not remember who he had heard about

7  the motorhome from and could not remember any other examples of Woodvine being dishonest.

8  ECF No. 29 at 35-36.  Petitioner has presented no facts to indicate that Rodgers would have made

9  a credible witness, or any circumstances making it reasonably likely that the jury would have

10  believed Rodgers' assessment of Woodvine.

11      The record also shows that counsel cross-examined Woodvine and later called Deputy

12  Smith to impeach portions of Woodvine's testimony with prior inconsistent statements he had

13  made when reporting the assault on June 2, 2013.  Counsel also elicited testimony from his co-

14  defendant's witness, investigator Elizabeth Krohn, that revealed additional inconsistent

15  statements regarding Woodvine's animosity toward petitioner.  1 RT 206-07, 237-38; 2 RT 619-

16  20; 3 RT 828.  This record does not establish a failure to call witnesses on petitioner's behalf

17  because of a financial conflict, since counsel did in fact call a witness to impeach Woodvine's

18  testimony.  Furthermore, given the failure to demonstrate Rodgers would have been a credible

19  witness and in light of the impeachment testimony elicited from Smith and Krohn, petitioner also

20  cannot overcome Strickland's presumption that counsel's failure to present Rodgers' testimony

21  was within the range of acceptable professional performance.

CONCLUSION

23      For all the reasons explained above, IT IS HEREBY RECOMMENDED that the petition

24  for writ of habeas corpus be denied.

25      These findings and recommendations are submitted to the United States District Judge

26  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

27  after being served with these findings and recommendations, any party may file written

28  objections with the court and serve a copy on all parties.  Such a document should be captioned

28

1  "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

2  he shall also address whether a certificate of appealability should issue and, if so, why and as to

3  which issues.  See 28 U.S.C. § 2253(c)(2).  Any reply to the objections shall be served and filed

4  within fourteen days after service of the objections.  The parties are advised that failure to file

5  objections within the specified time may waive the right to appeal the District Court's order.

6  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

7  DATED: February 9, 2022

8  _____

9  ALLISON CLAIRE
   UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28